UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VICKI MURPHY, o/b/o NATHAN MURPHY, a minor, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 05 C 3044 |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

## <u>MEMORANDUM OPINION</u>

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on Plaintiff Vicki Murphy ("Murphy")'s motion for the entry of a final judgment under Federal Rule of Civil Procedure 58 and entry of an award of attorney's fees pursuant to the Equal Access to Justice Act, ("EAJA") 28 U.S.C. § 2414 against Defendant Michael J. Astrue, Commissioner of Social Security ("Defendant")[1]. For the reasons set forth below, Murphy's motion for entry of a final judgment under Fed. R. Civ. P. 58 is granted and her motion for attorney's fees under the EAJA is denied.

---

[1] Defendant and ALJ will be used interchangeably throughout this opinion.

**BACKGROUND**

Murphy applied to the Social Security Administration ("SSA") for Supplemental Social Security Income ("SSI") benefits for her minor son Nathan on November 20, 2001, alleging that Nathan suffered from attention deficit hyperactivity disorder ("ADHD") and affective mood disorders. At the administrative hearing, an Administrative Law Judge ("ALJ") consulted Dr. Kenneth Kessler ("Dr. Kessler"), a clinical psychologist, to help him determine whether Nathan was disabled. *Murphy* 496 F.3d at 632.

Dr. Kessler reviewed Nathan's medical records to see whether Nathan had a marked limitation in any of the following six domains under 20 C.F.R. Pt. 404, Subpt. P, App. 1:

      1) acquiring and using information;
      2) attending and completing tasks;
      3) interacting and relating with others;
      4) moving about and manipulating objects;
      5) caring for oneself; and
      6) health and physical well-being.

After doing so, Dr. Kessler concluded that Nathan exhibited a marked limitation in the domain of "interacting and relating to others" but explained that "the available information was inadequate to determine whether Nathan" suffered from the domain of "attending and completing tasks." *Id*. Had Dr. Kessler found that Nathan exhibited a marked impairment in at least two domains of functioning or an extreme limitation

in one, functional equivalency would have existed and the ALJ would have found Nathan to be disabled under the SSA. *Id*. at 633.

In need of more information, the ALJ ended the hearing without making an ultimate determination and told Murphy that he would request that the school complete a behavioral assessment for Nathan and forward it to him. *Id.* The ALJ hoped that he would be able to make a final decision as to Nathan's alleged disability after receiving the behavioral assessment from the school. *Id.*

When the ALJ received Nathan's behavioral assessment, which included Nathan's behavioral progress reports, scores on academic achievement tests, and teacher surveys, he did not contact Dr. Kessler. *Id*. at 633. Instead, the ALJ reviewed Nathan's behavioral assessment on his own and concluded that Nathan did not have a marked impairment in the domain of "attending and completing tasks." *Id*. Having found that Nathan had a marked impairment in only one domain, the ALJ concluded that Nathan was not disabled. *Id.*

The ALJ also found that Nathan's parents "were not fully credible." The ALJ based his finding on the fact that Nathan's parents' "'complaints were not entirely consistent with the other substantial evidence of record'" and that "Murphy chose to pursue Social Security Income [for Nathan] only after she failed to secure child support from Nathan's biological father." *Id.*

- 3 -

The Appeals Council declined to review Murphy's case, which made the ALJ's decision, the Defendant's final decision. *Id.* Subsequently, Murphy sought judicial review of the ALJ's decision and we affirmed because we found there was substantial evidence to support the ALJ's credibility finding and his decision not to re-contact Dr. Kessler with the behavioral assessment. *Id.*

Murphy appealed our ruling to the Seventh Circuit, who affirmed in part and vacated in part. The Seventh Circuit agreed that the ALJ was qualified to interpret the school records without expert assistance. However, it vacated our findings that there was substantial evidence to support the ALJ's determinations about Nathan's disability and his parents' lack of credibility. *Id.* 634-635. The Seventh Circuit remanded Murphy's case directly back to the SSA for further proceedings consistent with its rulings. *Id.* at 636.

Murphy now requests that we enter a final judgment under Fed. R. Civ. P. 58 and grant her motion for attorney's fees pursuant to the EAJA. For the following reasons, Murphy's request for an entry of final judgment under Fed. R. Civ. P. 58 is granted and her motion for attorney's fees under the EAJA is denied without prejudice.

- 4 -

## I.    Motion for Final Judgment Under Fed. R. Civ. P. 58

*A.    Legal Standard*

Fed. R. Civ. P. 58 states:

(a)    Every judgment and amended judgment must be set out in a separate document, but a separate document is not required for an order disposing of a motion:

    (1)    for judgment under Rule 50(b);

    (2)    to amend or make additional findings under Rule 52(b);

    (3)    for attorney's fees under Rule 54;

    (4)    for a new trial, or to alter or amend the judgment, under Rule 59; or

    (5)    for relief under Rule 60.

(b)

    (1)    Subject to Rule 54(b) and unless the court orders otherwise, the clerk must, without awaiting the court's direction, promptly prepare, sign, and enter the judgment when:

        (A)    the jury returns a general verdict;

        (B)    the court awards only costs or a sum certain; or

        (C)    the court denies all relief.

    (2)    Subject to Rule 54(b), the court must promptly approve the form of the judgment, which the clerk must promptly enter, when:

        (A)    the jury returns a special verdict or a general verdict with answers to written questions; or

        (B)    the court grants other relief not described in this subdivision (b).

(c)    For purposes of these rules, judgment is entered at the following times:

    (1)    if a separate document is not required, when the judgment is entered in the civil docket under Rule 79(a); or

    (2)    if a separate document is required, when the judgment is entered in the civil docket under Rule 79(a) and the earlier of these events occurs:

        (A)    it is set out in a separate document; or

        (B)    150 days have run from the entry in the civil docket.

(d)    A party may request that judgment be set out in a separate document as required by Rule 58(a).

(e)    Ordinarily, the entry of judgment may not be delayed, nor the time for appeal extended, in order to tax costs or award fees. But if a timely motion for attorney's fees is made under Rule 54(d)(2), the court may act before a notice of appeal has been filed and become effective to order that the motion have the same effect under Federal Rule of Appellate Procedure 4(a)(4) as a timely motion under Rule 59.

In order to be in compliance with Fed. R. Civ. P. 58, a final judgment must be contained on a separate document which "set[s] forth the relief to which the prevailing party is entitled or the fact that the plaintiff has been denied all relief." *U.S. v. Indrelunas*, 411 U.S. 216, 221 (1973). A final judgment under Fed. R. Civ. P. 58 must not "incorporate some other document or contain legal reasoning." *Reytblatt v. Denton*, 812 F.2d 1042, 1044 (7th Cir. 1987). It must be "self-contained and complete" *American Interinsurance Exch. v. Occidental Fire & Cas. Co.*, 835 F.2d 157, 159 (7th Cir. 1986), and "'end[] the litigation on the merits...leaving [] nothing for the district court to do but execute the judgment.'" *Baltimore Orioles v. Major League Baseball Players Assoc.*, 805 F.2d 663, 666 (7th Cir. 1986).

B.    *Discussion*

In the instant case, the Seventh Circuit remanded Murphy's case, not to us, but directly to the SSA. A similar situation occurred in *O'Connor v. Shalala*, where the

appellate court remanded the case directly to the SSA. 23 F.3d 1232, 1234 (7th Cir. 1994). Noticing that its remand order had bypassed the district court, the *O'Connor* court noted that appellate courts do not "have authority to enter...a judgment remanding a disability case to the [SSA] rather than to the district court." *Id.* The *O'Connor* court further stated that the authority to remand a disability case to the SSA "is reserved to the district courts...and can be accomplished only through entry of a final judgment in the district court pursuant to Fed. R. Civ. P. 58." *Id.*

Consequently, the *O'Connor* court reasoned that its remand order could not mean what it purported to state because Congress had not "established direct circuit court review of an administrative agency's decision." *Id.* at 1234. The proper procedure, the *O'Connor* court explained, was for "the district court [to] conduct[] an appellate review of the Secretary's decision, and [for the appellate court to] then review the district court's judgment." *Id.* Moreover, the *O'Connor* court held that it would have been proper for the district court to recognize "that [the appellate court] meant something other than what [it] said, and enter[] its own remand order." *Id.* at 1235.

On the advice of the *O'Connor* court, we will accordingly remand Murphy's case to the SSA and enter a Fed. R. Civ. P. 58 final judgment.

- 7 -

## II.     Motion for Attorney's Fees Under the EAJA

### A.     Legal Standard

The EAJA sets out four requirements, which Murphy must meet, in order to collect attorney's fees under the EAJA: 1) Murphy must be a prevailing party; 2) the ALJ's position must not be substantially justified; 3) Murphy's fee application must be submitted to the court within 30 days of our final judgment in the action and must be supported by an itemized statement; and 4) there must not be any special circumstances in existence that make an award of attorney's fees unjust. 28 U.S.C. § 2412.

The parties do not dispute that Murphy is a prevailing party, that Murphy's application was timely submitted and supported with an itemized statement, or that no special circumstances exist that would make an award of attorney's fees unjust. However, the Defendant does contend that Murphy should not be awarded attorney's fees under the EAJA because the ALJ's position was substantially justified.

A Circuit Court finding against an ALJ does not automatically entitle the prevailing party to attorney's fees. *Federal Commission v. Rose*, 806 F.2d 1081, 1087 (D.C. Cir. 1986). This is partly because the "substantial evidence" standard the Circuit Court uses to weigh the merits of a prevailing party's SSI claim is a higher standard than the "substantial justification" standard the district court uses to

consider whether to award attorney's fees to the prevailing party. *Rose*, 806 F.2d at 1087.

Under the "substantial evidence" standard, the Circuit Court must determine whether "a reasonable person could...accept [the ALJ's] reasoning as adequate to support [his] decision." *Id*. Alternatively, under "the substantial justification" standard, the Defendant has the burden to prove only that the ALJ's position was "'justified in substance or in the main'-that is, justified to a degree that could easily satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565-66 (1988). An ALJ's position "can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Pierce*, 487 U.S. at 565-66.

"'Substantially justified' does not mean 'justified to a high degree' but rather has been said to be satisfied if there is a 'genuine dispute,' or if reasonable people could differ as to the appropriateness of the contested action." *Stein v. Sullivan*, 966 F.2d 317, 320 (7th Cir. 1992). Moreover, "an ALJ is not required to evaluate every piece of testimony and submitted evidence." *Burnett v. Bowen*, 830 F.2d 731, 735 (7th Cir. 1987). The "ALJ's assessment of the evidence" need only meet "a minimum level of articulation." *Stephens v. Heckler*, 766 F.2d 284, 287. (7th Cir. 1985). It is true that even where an ALJ fails to meet this modest articulation

- 9 -

requirement, his position may still be considered "substantially justified." *Stein*, 966 F.2d at 320.

B.    *Discussion*

Murphy argues that the ALJ's lack of substantial justification was demonstrated by the Seventh Circuit's findings that: (1) Dr. Kessler was not provided sufficient evidence to reach a conclusion regarding disability; (2) the ALJ disregarded evidence of Nathan's disability without identifying any support for his conclusion; and (3) the ALJ's credibility finding was not supported by the record.

As we previously mentioned, a prevailing party is not automatically entitled to attorney's fees when a Circuit Court finds against an ALJ. *Rose*, 806 F.2d at 1087. When considering whether to award attorney's fees under the EAJA, we must take a fresh look at the case from an EAJA perspective and reach a judgment independent from the Seventh Circuit's ultimate decision on the merits. *Id*. at 1087-90. While our consideration of Murphy's application for attorney's fees will be based primarily on the ALJ's actions at the SSI hearing, we will not ignore the Seventh Circuit's findings as "strong language against the [ALJ's] position in an opinion discussing the merits of a key issue is [considered to be] evidence in support of an award of EAJA fees." *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004).

### 1.      The ALJ's Disability Finding

Nathan argues that the Seventh Circuit's opinion in this case contains the type of strong language that supports an award of attorney's fees under the EAJA. *Golembiewski*, 382 F.3d at 724. We disagree.  The Seventh Circuit's opinion in the present case pales in comparison to its decision in *Golembiewski*.  In *Golembiewski*, the Seventh Circuit found that both "the ALJ and [the] Commissioner violated clear and long judicial precedent [including]...the Commissioner's own Ruling[s] and Regulations." *Id.*  More specifically, the Seventh Circuit in *Golembiewski* found that the ALJ and Commissioner had failed to apply necessary factors to evaluate evidence, mischaracterized medical evidence, made arguments against its own prior rulings, and relied on facts never before discussed, all in an attempt to bolster their credibility. *Id.*  The Seventh Circuit in *Golembiewski* went so far as to "urge the Commissioner to assign the matter to a different ALJ" on remand to the SSA in an effort to avoid such wrongful acts. *Id.* at 725.

The Seventh Circuit made no such admonishments in the present case.  In fact, the Seventh Circuit's remand order in the instant matter was rooted in its belief that the ALJ had failed to *fully* articulate the reasons for his decisions.  Moreover, the ALJ supported his decision that Nathan did not have a marked limitation in the "attending and completing tasks" with:

> school documents [that] reflected that Nathan did not talk excessively,
> did not interrupt or intrude, did not move about unexpectedly, knew the

> answers to questions when called upon, was cooperative, had a good sense of humor, tried to follow rules, and wanted to do well in his studies.

*Murphy*, 496 F.3d at 635.

As mentioned before, an "ALJ's assessment of the evidence" need only meet "a minimum level of articulation." *Stephens*, 766 F.2d at 287. "An ALJ is not required to evaluate every piece of testimony and submitted evidence." *Burnett*, 830 F.2d at 735. Rather, an ALJ's actions will be deemed substantially justified as long as they provide enough support to show that "reasonable people could differ as to the appropriateness of the contested action." *Stein*, 966 F.2d at 320. We believe that the reasons the ALJ articulated for his decision that Nathan did not have a marked impairment in the "attending and completing tasks" domain the minimum level of articulation required under the substantial justification standard. *Stephens*, 766 F.2d at 287. Moreover, because the ALJ determined that Nathan had a marked limitation in only one of the six domains, we find that the ALJ's conclusion that Nathan was not disabled under the SSA was substantially justified. *Murphy*, 496 F.3d at 633; 20 C.F.R. Pt. 404.

## 2. The ALJ's Decision Not to Re-Contact Dr. Kessler with Nathan's Behavioral Assessment

Murphy further argues that the Seventh Circuit's discussion of the ALJ's failure to present Dr. Kessler with Nathan's behavioral assessment, which he was not

previously able to see, demonstrates that the ALJ did not identify *any* support for his conclusion. This is not so. It was only after reviewing Nathan's behavioral assessment that "the ALJ ruled that Nathan did not have a marked impairment in the domain of 'attending and completing tasks.'" Murphy, 496 F.3d at 633. Furthermore, the Seventh Circuit's ruling that the ALJ was qualified to interpret the school records on his own, without Dr. Kessler's assistance, discredits Murphy's argument that the ALJ was not substantially justified in his decision not to re-contact Dr. Kessler with Nathan's behavioral assessment. Accordingly, we find that the ALJ was substantially justified in reviewing Nathan's behavioral assessment on his own before making his decision that Nathan did not have a marked impairment in the domain of "attending and completing tasks" because the ALJ was qualified to interpret the school records and cited these school records in an effort to support his ultimate decision that Nathan was not disabled.

### 3. The ALJ's Credibility Finding

Murphy also argues that the ALJ was not substantially justified in his credibility finding about Nathan's parents because he did not provide enough support for his decision. We disagree. The ALJ's credibility finding about Nathan's parents was premised on the fact that "'their complaints were not entirely consistent with...other substantial evidence of record.'" *Murphy*, 496 F.3d at 633. More

- 13 -

specifically, after hearing Nathan's parents' testimony, the ALJ determined that "the family's observations of Nathan's aggression and inattentiveness did not align with more positive observations by school officials." *Id*. at 635. The ALJ also noted that there was "evidence that Mrs. Murphy chose to pursue Supplemental Security Income only after she failed to secure child support from Nathan's biological father." *Id.* at 633. All of these reasons support the ALJ's determination that Nathan's parents were not fully credible. Such support leads us to find that the ALJ was substantially justified in his credibility determination.

## CONCLUSION

For the foregoing reasons, Murphy's Fed. R. Civ. P. 58 motion for a final judgment is granted and Murphy's motion for attorney's is denied.

Charles P. Kocoras
United States District Judge

Dated:  February 4, 2008

- 14 -